BROWN & Co. *v.* UNITED STATES (No. 1359).[1]

1. STRAW AND GRASS.

"Straw" and "grass" in popular usage have never been applied to fibers taken from the bark of trees, but even if bast fiber were regarded as vegetable fiber of like kind with ordinary grass and straw, paragraph 463, tariff act of 1909, would not apply. That paragraph is expressly limited to manufactures of grass and straw in their natural form and structure.

2. PROTEST INSUFFICIENT.

However, the protests here confined the collector's attention to paragraph 215; there was nothing in them to notify that official that any reliance was placed on paragraph 463. The protests were insufficient.

United States Court of Customs Appeals, November 18, 1914.

APPEAL from Board of United States General Appraisers, Abstract 34599 (T. D. 34127).

[Affirmed.]

*Allan R. Brown* for appellants.

*Bert Hanson,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Several shipments of slippers, classified by the collector of customs at the port of New York as wearing apparel composed in chief value

---

of cotton, were assessed for duty at 50 per cent ad valorem under the provisions of paragraph 324 of the tariff act of August 5, 1909, which paragraph reads as follows:

324. Clothing, ready-made, and articles of wearing apparel of every description, composed of cotton or other vegetable fiber, or of which cotton or other vegetable fiber is the component material of chief value, made up or manufactured, wholly or in part, by the tailor, seamstress, or manufacturer, and not otherwise provided for in this section, fifty per centum ad valorem.

The classification of 33 of the 57 entries made was protested by the importing company on the ground that the goods covered by them were composed in chief value of bast, dutiable at 35 per cent ad valorem under the provisions of paragraph 215 of the said act, which paragraph reads as follows:

215. House or cabinet furniture wholly or in chief value of wood, wholly or partly finished, and manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for in this section, thirty-five per centum ad valorem.

To the classification of the remaining 24 entries protest was made on the ground that the articles therein described were manufactures in chief value of grass or straw, dutiable at 35 per cent ad valorem under paragraph 463 of the same act, which paragraph, in so far as material, reads as follows:

463. Manufactures of * * * grass, * * * straw, * * * or of which these substances or any of them is the component material of chief value, not specially provided for in this section, thirty-five per centum ad valorem; but the terms "grass" and "straw" shall be understood to mean these substances in their natural form and structure, and not the separated fiber thereof; * * *.

The board found that all of the slippers were composed in chief value of straw, and accordingly sustained the protests claiming that the goods were manufactures in chief value of straw and overruled those in which it was claimed that the articles imported were manufactures in chief value of bast.

The importer appealed from that part of the board's decision overruling the protests based on paragraph 215, and now contends that those protests were sufficient to call the attention of the collector to the fact that the goods were claimed to be manufactures of straw or grass, which class of goods is provided for in paragraph 463 and in no other paragraph of the act.

The trouble with that contention is that the importer did not claim that the goods covered by the overruled protests were manufactures of straw or grass. The claim of those protests was that the importations to which they referred were manufactures of bast, and bast, as that term is commonly understood, is neither straw nor grass. The term "bast" was originally applied to the fiber obtained from the inner bark of the lime or linden tree. Subsequently the

meaning was apparently extended to cover the strong, woody fiber obtained from the phloem or inner fibrous bark of various trees other than the linden. See Worcester's Dictionary, Webster's International Dictionary, Century Dictionary, Standard Dictionary, and Oxford Dictionary.

The words "straw" and "grass" in popular usage have never been applied to the fibers taken from the bark of trees, and even if bast fiber could be regarded as a vegetable fiber of the same nature and kind as the separated fibers obtained from grass and straw, paragraph 463 would still be inapplicable in terms to bast, for the reason that that paragraph is expressly limited to manufactures of grass and straw in their natural form and structure.

In our opinion the denomination of the slippers as manufactures in chief value of bast conveyed not the shadow of a hint that they were made of straw or grass and led the collector to the belief that they were claimed by the protests to be manufactured of woody fiber—a belief which must have been strengthened by the allegation that the goods were dutiable under paragraph 215, which provides for manufactures of wood or bark or of which wood or bark is the component material of chief value.

The classification of the goods, the rate of duty, and the paragraph specified by protestants confined the attention of the collector to paragraph 215, and certainly there was nothing in any of the protests which would cause the collector to suspect that the importers did not rely on paragraph 215, but on paragraph 463, which was not mentioned at all. If the importers had paragraph 463 in mind at the time they made objection to the collector's classification, their protests not only fail to show that fact, but affirmatively establish that the collector was misled and misdirected as to the real ground of their complaint.

We think the protests involved in this appeal were wholly insufficient and that therefore they were properly overruled by the board.

The decision of the Board of General Appraisers is *affirmed.*